UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:11 CR 84 |
| | ) | |
| CHOPPER LOUGHRAN | ) | |

## OPINION AND ORDER

Defendant Chopper Loughran has filed a motion for a judgment of acquittal on Count 1 of the superseding indictment. (DE # 81.) The government has filed a response (DE # 83), and defendant has filed a reply (DE # 84.) For the following reasons, that motion is denied.

## I.     BACKGROUND

Defendant was charged by superseding indictment (DE # 37) with two counts of making false statements in connection with receiving federal workers' compensation benefits in violation of 18 U.S.C. § 1920; eleven counts of wire fraud in connection with the receipt of federal benefits in violation of 18 U.S.C. § 1343; one count of federal program fraud in violation of 7 U.S.C. §  2024(b); and one count of making false statements or representations in connection with the receipt of federal benefits, in violation of 18 U.S.C. § 1001(a). Defendant pled not guilty to all of the charged offenses, and a jury trial was held. Defendant was convicted at trial of all but one count – she was found not guilty of Count 2, which charged her with making false statements in connection with receiving federal workers' compensation benefits. (DE # 75.)

Defendant has now moved for a judgment of acquittal on Count 1 of the superseding indictment, which charged defendant with making false statements in connection with receiving federal workers' compensation benefits in violation of 18 U.S.C. § 1920. (DE # 81.) Count 1 charged defendant with submitting false claims for Office of Workers' Compensation Program ("OWCP")[1] benefits, specifically, that defendant submitted mileage reimbursement claims for medical appointments with specific health care providers on dates that she did not visit those providers; that defendant submitted inflated mileage reimbursement claims for medical appointments; and that defendant submitted childcare reimbursement claims regarding medical visits for dates she did not actually visit those medical offices. (DE # 37 at 5.)

II. ANALYSIS

Defendant has moved for a judgment of acquittal on Count 1 of the superseding indictment under FEDERAL RULE OF CRIMINAL PROCEDURE 29, arguing that the government failed to meet its burden of proof on two elements of the charged offense, as is explained in more detail below. (DE # 81.) "A judgment of acquittal must be granted when 'the evidence is insufficient to sustain a conviction.'" *United States v. White*, 698 F.3d 1005, 1013 (7th Cir. 2012) (citing FED. R. CRIM. PRO. 29(a)). When reviewing a motion for judgment of acquittal, the court must "examine that evidence in the light most favorable to the government and will uphold the jury's verdict so long as

---

[1] The OWCP administers benefits to federal employees who sustain on-the-job injuries, including reimbursement for mileage and childcare costs incurred during travel related to medical treatment.

2

any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Howard*, 619 F.3d 723, 726 (7th Cir. 2010). A defendant challenging a conviction based on the sufficiency of the evidence faces a "nearly insurmountable hurdle[.]" *Id.* (citations and quotations omitted); *see also United States v. Melendez,* 401 F.3d 851, 854 (7th Cir. 2005) ("Sufficiency of the evidence challenges rarely succeed because we owe great deference to the jury's verdict."). A sufficiency of the evidence challenge can only succeed if "the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Warren*, 593 F.3d 540, 546 (7th Cir. 2010) (citation and quotation omitted).

Count 1, which charged defendant with making false claims in connection with the receipt of federal workers' compensation benefits in violation of 18 U.S.C. § 1920, had four elements:

> 1. That the defendant knowingly and willfully made a false statement or representation to the United States Department of Labor, Office of Workers' Compensation Programs;
>
> 2. in an effort to receive federal employee compensation;
>
> 3. the statement or representation was of a material fact; and
>
> 4. the benefit exceeded $1,000.00.

*See* 18 U.S.C. § 1920; *see also United States v. Waldren*, 431 F. App'x 374, 376 (6th Cir. 2011). In her motion for a judgment of acquittal, defendant argues that the government failed to meet its burden of proof on two of the elements of the charged offense: that

3

defendant willfully made false statements and that she obtained benefits exceeding $1,000. (DE # 81 at 2.) The court will address each argument in turn.

**A. Willfully Submitting False Statements**

Defendant first argues that the government failed to prove that she willfully submitted false statements beyond a reasonable doubt. (*Id.*) A person acts willfully if he or she acts voluntarily and intentionally, and with the intent to do something the law forbids. *See United States v. Webber*, 536 F.3d 584, 597 (7th Cir. 2008).

At trial, the government presented evidence that defendant submitted mileage reimbursement claims for driving to health care providers on dates the government contended defendant did not actually visit those providers. The government supported its position with testimony and evidence from employees of those health care providers which revealed that the providers' records indicated that defendant did not have an appointment for the date submitted for reimbursement, or that defendant canceled or rescheduled the appointment on the date submitted for reimbursement. *See e.g.*, Government's Group Exhibit 29. Additionally, the government presented evidence that defendant submitted mileage reimbursement claims for dates that she did actually visit a health care provider, but argued that those reimbursement claims were inflated – the government argued that defendant added extra miles to her claim that she had not actually driven. *Id.* The government computed the mileage by inputting defendant's asserted beginning and end points for each trip into MapQuest. *See id.*; Government's Exhibit 35.

4

In her motion for a judgment of acquittal, defendant argues that the evidence at trial revealed that each health care provider employee who testified at trial testified that patients will come to the office for various reasons, and that a patient's chart would only indicate that a patient visited the office on dates when the patient actually received treatment. (DE # 81 at 3.) Additionally, defendant argues that "[w]ithout being able to recall the specific dates, some of the witnesses testified that Ms. Loughran came to the office at times that were not noted in her charts." (*Id.*)

As for the government's evidence regarding defendant's inflated mileage reimbursement claims, defendant argues that the government failed to account for extra mileage on days that defendant had to drive additional miles due to a bridge by her house being unavailable after a recent flood, and days that defendant drove additional miles to drop off her children at a babysitter. (*Id.*) Defendant introduced several MapQuest printouts at trial which she contended detailed the actual routes that she had traveled and indicated the extra mileage she had requested. (*Id.* at 4); *see* Defendant's Exhibits AD, AE, AF, and AG. Defendant argues that this evidence reveals that the government failed to meet its burden of proving beyond a reasonable doubt that defendant willfully submitted false statements (DE # 81 at 4.)

Defendant made these same arguments at trial, and it was up to the jury to evaluate them. *Webber*, 536 F.3d at 598; *see also United States v. Genova*, 333 F.3d 750, 757 (7th Cir. 2003) ("Rule 29(c) does not authorize the judge to play thirteenth juror."). While the jury had before it defendant's version of events, it also had the government's

5

evidence that there were numerous claims for mileage reimbursements on dates where no record indicated that plaintiff actually visited a health care provider.[2] Additionally, the jury had the MapQuest printouts detailing the most direct route for defendant's trips to the doctor, including routes from defendant's home to and from her parents' home so her parents could watch her kids while she was receiving treatment. (*See* Government's Exhibit 35.) Although defendant testified that she never submitted false or inflated mileage reimbursement claims, it was up to the jury to determine her credibility. *United States v. Spells*, 537 F.3d 743, 747 (7th Cir. 2008) (court must not "weigh the evidence or second-guess the jury's credibility determinations.").[3]

---

[2] The government presented evidence that defendant submitted claims on dates which she canceled or rescheduled an appointment. (*See* Government's Group Exhibit 29.) It seems incredibly unlikely that defendant would have made a trip to a health care provider on a date when she canceled or rescheduled an appointment with that same provider. This is certainly evidence upon which a reasonable jury could conclude defendant willfully submitted false claims, and is also evidence that would give a jury reason to infer that the other claims defendant submitted were false.

[3] In its response brief, the government also states: "The defendant was advised in a DOL letter on April 27, 2009, stating that any expense incurred on the day to day expenses of day care was not reimbursable. Babysitting fees were not paid after September 18, 2008, yet the defendant continued to submit them. *See*, Government Exhibit 15." (DE # 83 at 6.) The court is unsure what this information adds to the analysis on defendant's motion for judgment of acquittal. While the superseding indictment did allege that defendant submitted false claims by seeking reimbursement for childcare expenses on dates that she did not actually visit a health care provider, it did not charge defendant with submitting false claims for day-to-day childcare expenses. (DE # 37 at 4-5.) Additionally, the undersigned district judge does not recall the government arguing at trial that defendant's false statements included making claims for day-to-day childcare expenses.

Defendant takes issue with the government's argument on this point. Defendant argues that the August 27, 2009 letter indicated that defendant "was entitled to reimbursement

As for defendant's arguments regarding the dates on which she traveled extra miles due to a flood, according to Government's Exhibit 15 and Government's Group Exhibit 29, defendant submitted five total requests for mileage on days that she drove a different route due to a flood.[4] While this evidence does support defendant's argument that she did not willfully make false statements or obtain in excess of $1,000 as a result of these false statements, the government presented evidence that defendant submitted 22 claims for dates on which she did not visit a health care provider, and evidence that defendant had submitted approximately 90 claims requesting inflated mileage. *See* Government's Group Exhibit 29. Thus, the dates that defendant may have traveled additional miles due to a flood make up only a very small portion of the total number of false claims the government presented evidence of at trial. The jury had this evidence in front of it, however, and it was up to the jury to evaluate this evidence in relation to the elements of the charged offense.

---

for expenses incurred for babysitting that were attributable for her injury." (DE # 84 at 1.) Regardless of whether defendant is correct on this point, the government did not allege in the superseding indictment or argue at trial that defendant submitted false statements by seeking reimbursement for day-to-day childcare expenses. Thus, this information does not support defendant's argument that she did not willfully submit false statements. Even if the government had argued that defendant's false statements included claims for day-to-day childcare expenses, however, the government presented other evidence of defendant willfully submitting false statements, and overturning the jury's verdict would still be inappropriate.

[4] The Department of Labor only reimbursed defendant for three of these requests, and those three requests are the only mileage calculations due to the flood that contributed to the government's bottom line for the total amount that defendant was overpaid. (*See* Government's Exhibit 29.)

Defendant also argues that the government failed to account for additional miles that defendant drove to drop off her children at a babysitter. (DE # 81 at 3.) Defendant only indicated that she was claiming additional miles for driving to the babysitter on seven of the dates that the government contended that defendant inflated mileage or claimed mileage for a date that she did not actually visit a health care provider. *See* Government's Exhibit # 15. And, although defendant also claimed additional miles for days when she claimed that her parents watched her children, the evidence the government submitted at trial indicated that it considered that fact when calculating the appropriate number of miles defendant traveled.[5] *See* Government's Exhibit 35. In any event, however, all of this information was presented to the jury, and it was up to the jury to evaluate the evidence and the arguments that the government and defendant made based on that evidence.

In sum, the court finds that when viewing the evidence in the light most favorable to the government, a rational jury could have found that defendant willfully submitted false statements. Therefore, defendant's motion will be denied as it relates to the first element of Count 1.

---

[5] As the undersigned district court judge recalls, defendant also testified at trial that there were times when she would return home after receiving treatment to rest before returning to pick her children up from the babysitter or her parents' house. Although this could explain the additional miles plaintiff sought to be reimbursed for, the reimbursement forms themselves did not indicate that plaintiff had traveled this extra distance, and the jury apparently did not find defendant's testimony on this issue to be credible.

**B. Benefit of False Statements Exceeded $1,000**

Defendant also argues that the government failed to prove beyond a reasonable doubt that she obtained benefits in excess of $1,000. (DE # 81 at 4.) At trial, the government introduced Government's Group Exhibit 29, which the government argued outlined and summarized the amount of benefits that defendant received as a result of submitting false claims for dates which she did not have appointments with health care providers and dates on which she did have appointments but that she inflated the number of miles she had actually driven. Defendant argues that the government failed to prove beyond a reasonable doubt that the benefits defendant received as a result of her false statements were in excess of $1,000. *See* 18 U.S.C. § 1920.

Specifically, defendant argues that the evidence presented at trial showed that defendant "visited the various medical providers on days that were not noted in her patient's charts." (DE # 81 at 4.) Additionally, defendant argues that the "undisputed evidence showed that Ms. Loughran actually traveled more miles than what Special Agent Henderson presented in Government's Exhibit Gr. 29." (*Id.*) Defendant only directs the court to one example of what she contends is evidence that supports her position that the government failed to prove beyond a reasonable doubt that the benefits in this case exceeded $1,000: "Government's Exhibit 19, a copy of Ms. Loughran's MRI disk from Porter Hospital, indicates that the disk was created on a date that the Government contends Ms. Loughran did not travel to the facility." (*Id.*)

9

As noted above, however, defendant also presented evidence at trial that she traveled additional miles on three different dates (five total claims – only three of which were paid and contributed to the bottom line) due to a flood. But even if the court were to deduct the amount the government calculated as an overpayment for the three flood days ($43.28) and the amount the government calculated as overpayment for defendant's trip to retrieve her MRI disk at Porter Hospital ($46.00), the amount of benefits defendant would have received would still be well in excess of $1,000, as the total overpayment was at least $1,864.70.[6] *See* Government's Exhibit # 15; Government's Group Exhibit 29.

Defendant correctly points out in her motion that the evidence at trial indicated that a patient could visit a health care provider without a notation being made in the patient's chart, and also that "some of the witnesses testified that [defendant] came to the office at times that were not noted in her charts." (DE # 81 at 3.) Additionally, defendant presented evidence in the form of testimony and documents (*see* Defendant's

---

[6] In its response brief, the government contends that the total amount of overpayment was $1,864.70, which was based on evidence incorporating dates "reflecting 22 no doctor visits, babysitting payments for no doctor visits, and inflated mileage." (DE # 83 at 7.) That number, which comes from Government's Group Exhibit 29, does not appear to include the amount paid by the DOL for babysitting expenses for dates on which defendant did not have an appointment with a health care provider ($88). The last column on the spreadsheet in Government's Group Exhibit 29 calculated the inflated payment or overpayment for each of defendant's reimbursement claims. That column, the contents of which were ultimately added together to come up with the $1,864.70 number, does not include any babysitting expenses on the dates that the government concluded defendant did not visit a health care provider. Thus, the overpayment amount appears to be even higher than $1,864.70.

Exhibits AD, AE, AF, and AG) indicating that she traveled different routes than the routes the government contended she traveled on dates that she allegedly inflated her mileage reimbursement claims.

As discussed above however, the jury had this evidence in front of it and heard defendant's arguments regarding this evidence at trial. Although defendant's version of events could have supported a finding of not guilty on Count 1, the jury apparently did not find defendant to be credible. The court must "defer to the credibility determination of the jury[,] *United States v. Torres-Chavez*, No. 13–1340, 2014 WL 866424, at *5 (7th Cir. March 6, 2014) (citation and quotation omitted), and the evidence submitted at trial, when viewed in the light most favorable to the government, is sufficient for a rational jury to conclude beyond a reasonable doubt that defendant received in excess of $1,000 as the result of her false statements. Therefore, defendant's motion will be denied as it relates to the $1,000 threshold element of Count 1.

III. **CONCLUSION**

Defendant's motion for a judgment of acquittal on Count 1 of the superseding indictment is **DENIED**. (DE # 81.) Defendant's motion to stay the ruling on her motion for judgment of acquittal is **DENIED AS MOOT**. (DE # 86.)

            **SO ORDERED.**

Date: April 22, 2014

            s/James T. Moody
            JUDGE JAMES T. MOODY
            UNITED STATES DISTRICT COURT